Case No. 25-10378-G

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

## KEITH COOPER,

Appellant,

v.

## AIRBUS AMERICAS, INC.,

Appellee.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION
(District Court No. 1:23-cv-00309-MU)

---

## BRIEF OF APPELLEE
## AIRBUS AMERICAS, INC.

---

Kathryn M. Willis
**BURR & FORMAN LLP**
11 North Water Street, Suite 22200
Mobile, Alabama 36602
(251) 344-5151
kwillis@burr.com
Attorney for Appellee Airbus Americas, Inc.

No. 25-10378-G

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

KEITH COOPER,

*Appellant,*

vs.

AIRBUS AMERICAS, INC.,

*Appellee.*

**APPELLEE AIRBUS AMERICAS, INC.'S CERTIFICATE OF
INTERESTED PERSONS AND CORPORATE DISCLOSURE
STATEMENT**

Pursuant to Fed. R. App. P. R. 26.1 and 11th Cir. R. 26.1-1 (a), the undersigned counsel for Appellee Airbus Americas, Inc. hereby certifies that the following is a complete list of the trial judges, all attorneys, persons, associations of persons, firms, partnerships, and corporations which have an interest in the outcome of this particular case:

A^3 by Airbus LLC – Subsidiary of Appellee Airbus Americas, Inc.

Aerovel Corporation – Subsidiary of Appellee Airbus Americas, Inc.

C-1 of 5

No. 25-10378-G

*Keith Cooper v. Airbus Americas, Inc.*

Airbus Americas Customer Services, Inc. – Subsidiary of Appellee Airbus Americas, Inc.

Airbus Americas, Inc. – Appellee

Airbus Defence and Space, S.A. – Parent of Appellee Airbus Americas, Inc.

Airbus DS Government Solutions, Inc. – Subsidiary of Appellee Airbus Americas, Inc.

Airbus DS GS S.De R.L. De C.V – Subsidiary of Appellee Airbus Americas, Inc.

Airbus DS Military Aircraft, Inc. – Subsidiary of Appellee Airbus Americas, Inc.

Airbus Helicopters, Inc. – Subsidiary of Appellee Airbus Americas, Inc.

Airbus Robotics, GmbH – Subsidiary of Appellee Airbus Americas, Inc.

No. 25-10378-G

*Keith Cooper v. Airbus Americas, Inc.*

Airbus Robotics, LLC – Subsidiary of Appellee Airbus Americas, Inc.

Airbus Robotics, SAS – Subsidiary of Appellee Airbus Americas, Inc.

Airbus SAS – Parent of Appellee Airbus Americas, Inc. (AIR)

Airbus SE – Parent of Appellee Airbus Americas, Inc. (EADSF)

Airbus U.S. Florida 2, LLC – Subsidiary of Appellee Airbus Americas, Inc.

Airbus U.S. Florida, LLC – Subsidiary of Appellee Airbus Americas, Inc.

AIRBUS U.S. Space & Defense, Inc. – Subsidiary of Appellee Airbus Americas, Inc.

AV Capital Management, L.L.C. – Subsidiary of Appellee Airbus Americas, Inc.

Burr & Forman LLP – Law Firm for Appellee Airbus Americas, Inc.

Cooper, Keith – Appellant

C-3 of 5

No. 25-10378-G

*Keith Cooper v. Airbus Americas, Inc.*

Hawkins, Allison C. – Attorney for Appellee Airbus Americas, Inc.

Murray, Hon. P. Bradley – United States Magistrate Judge for the Southern District of Alabama

Satair, USA, Inc. – Subsidiary of Appellee Airbus Americas, Inc.

Tesat Government, LLC – Subsidiary of Appellee Airbus Americas, Inc.

TESAT Spacecom US, LLC – Subsidiary of Appellee Airbus Americas, Inc.

VAS Aero Services, LLC – Subsidiary of Appellee Airbus Americas, Inc.

Willis, Kathryn M. – Attorney for Appellee Airbus Americas, Inc.

Respectfully submitted,

*s/ Kathryn M. Willis*
KATHRYN M. WILLIS
ASB-8533-N76M
*Attorney for Appellee, Airbus Americas, Inc.*

C-4 of 5

OF COUNSEL:

BURR & FORMAN LLP
11 North Water Street, Suite 22200
Mobile, Alabama 36602
Telephone: (251) 344-5151
Facsimile: (251) 344-9696
Email:      kwillis@burr.com

## STATEMENT REGARDING ORAL ARGUMENT

The briefs and record adequately present the facts and arguments demonstrating why the District Court's rulings are due to be affirmed. Therefore, it is Appellee's belief that oral argument will not significantly aid the Court's decisional process. See Fed. R. App. P. 34(a)(2)(C); 11th Cir. R. 34-3(b)(3). However, if this Court believes that oral argument would be beneficial to the resolution of this appeal, Appellee would welcome the opportunity to present oral argument and to further demonstrate that the trial court's decision in its favor was correct and is due to be affirmed.

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT ............................. C-1

STATEMENT REGARDING ORAL ARGUMENT ................................. i

TABLE OF CONTENTS ............................................................... ii

TABLE OF AUTHORITIES ......................................................... iv

STATEMENT OF JURISDICTION ........................................... vii

STATEMENT OF THE ISSUES ..................................................... 1

STATEMENT OF THE CASE ........................................................ 2

    I.     The Course of Proceedings and Disposition Below ..................... 2

    II.    Statement of Facts ............................................................... 3

        A.    Airbus' Mobile Final Assembly Line ......................... 3

        B.    Appellant's Employment at Airbus ........................... 3

        C.    Appellant's Initial Training as a Manufacturing Engineer ................................................................. 4

        D.    Appellant's May 2021 Complaint to Human Resources ......... 5

        E.    Appellant's Second Period of Training ................................... 6

        F.    Appellant's Performance Improvement Plan ........................ 7

        G.    Appellant's Termination ................................................ 8

        H.    Appellant's FMLA Leave While at Airbus ........................... 9

    III.    Standard of Review ............................................................ 9

SUMMARY OF THE ARGUMENT ....................................... 10

ARGUMENT AND CITATIONS TO AUTHORITY ............................ 12

I.  The District Court Properly Applied Summary Judgment Principles. ...............................................................13

    A.  The District Court's Grant of Summary Judgment to Airbus Did Not Violate Appellant's Seventh Amendment Rights. ...............................................13

    B.  The District Court's Rulings on the Motion to Strike Were Not in Error. ...............................................15

    C.  The District Court's Lack of Ruling on the Partial Motion to Dismiss Did Not Prejudice Appellant. .................16

    D.  The District Court Did Not Have a Duty to Provide Appellant with a Copy of His Deposition Transcript. ..........17

II.  The District Court Properly Granted Summary Judgment on the Merits as to Each of Appellant's Claims. .......................19

    A.  The District Court Correctly Utilized All Three Proof Frameworks in Determining that there was No Genuine Issue of Material Fact regarding Appellant's Race Discrimination Claim. ............................................19

    B.  The District Court Viewed the Evidence in the Light Most Favorable to Appellant in Finding No Support for the Retaliation Claim. ...........................................22

    C.  The District Court Accurately Ruled on the FMLA Retaliation Claim. ................................................23

CONCLUSION .................................................................25

CERTIFICATE OF COMPLIANCE .......................................26

CERTIFICATE OF SERVICE............................................27

# TABLE OF AUTHORITIES

Page(s)

Cases

*Access Now, Inc. v. Sw. Airlines Co.,*
  385 F.3d 1324 (11th Cir. 2004) ........................................................... 18

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) .............................................................................. 14

*Bowens v. Escambia Cty. Bd. of Educ.,*
  No. 22-11560, 2023 WL 4145424 (11th Cir. June 23, 2023) .............. 22

*Burns v. Lawther,*
  53 F.3d 1237 (11th Cir. 1995) ............................................................. 13

*Cast Steel Prods., Inc. v. Admiral Ins. Co.,*
  348 F.3d 1298 (11th Cir. 2003) ............................................................. 9

*Chapman v. AI Transport,*
  229 F.3d 1012 (11th Cir. 2000) ........................................................... 13

*Dortch v. City of Montgomery,*
  No. 2:07CV1034-MEF, 2009 WL 959638 (M.D. Ala. April 8, 2009) ... 15

*Evers v. General Motors Corp.,*
  770 F.2d. 984 (11th Cir. 1985) ............................................................ 15

*Fleming v. Boeing Co.,*
  120 F.3d 242 (11th Cir. 1997) ............................................................. 23

*Gamba v. City of Sunrise,*
  157 Fed. App'x 112 (11th Cir. 2005) .................................................. 24

*Harris v. Pub. Health Tr. of Miami-Dade Cty.,*
  82 F.4th 1296 (11th Cir. 2023) ........................................................... 20

*Jefferson v. Sewon Am., Inc.,*
  891 F.3d 911 (11th Cir. 2018) ............................................................. 13

*Leigh v. Warner Bros., Inc.*,
212 F.3d 1210 (11th Cir. 2000) ............................................................ 15

*Lewis v. City of Union City, Ga.*,
918 F.3d 1213 (11th Cir. 2019) ............................................................ 21

*Lucas v. W.W. Grainger, Inc.*,
257 F.3d 1249 (11th Cir. 2001) .............................................................. 9

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) ............................................................................. 10

*Norelus v. Denny's, Inc.*,
628 F.3d 1270 (11th Cir. 2010) ............................................................ 18

*Parklane Hosiery Co. v. Shore*,
439 U.S. 322 (1979) ............................................................................. 13

*Process Techs. Servs., LLC v. Lunsford*,
Civ. Action No. 1-15-CV-2323-SCJ, 2016 WL 9065879 (N.D. Ga. Mar.
7, 2016) ................................................................................................ 17

*Rojas v. Fla.*,
285 F.3d 1339 (11th Cir. 2002) ............................................................ 21

*Ruiz v. Wing*,
991 F.3d 1130 (11th Cir. 2021) ............................................................ 18

*Salser v. Clarke Cnty. Sch. Dist.*,
802 F.Supp. 2d 1339 (M.D. Ga. 2011) ................................................ 21

*Travelers Indem. Co. of Connecticut v. Attorney's Title Ins. Fund., Inc.*,
Case,
No. 2:13-cv-670-FTM-38CM, 2016 WL 866368 (M.D. Fla. Mar. 7,
2016) .................................................................................................... 17

*Van T. Junkins v. U.S. Indus., Inc.*,
736 F.2d 656 (11th Cir. 1983) ............................................................. 15

*Yelling v. St. Vincent's Health Sys.*,
82 F.4th 1329 (11th Cir. 2023) ............................................................ 21

v

Rules

11th Cir. R. 26.1-1 (a) ............................................................................ 1

11th Cir. R. 28-1(m) ............................................................................ 26

11th Cir. R. 34-3(b)(3) ........................................................................... i

Fed. R. App. P. 28 (b)(1) ..................................................................... vii

Fed. R. App. P. 32(a)(5) ...................................................................... 26

Fed. R. App. P. 32(a)(6) ...................................................................... 26

Fed. R. App. P. 32(a)(7) ...................................................................... 26

Fed. R. App. P. 32(a)(7)(b)(iii) ........................................................... 26

Fed. R. App. P. 34(a)(2)(C) ................................................................... i

Fed. R. App. P. R. 26.1 ......................................................................... 1

Fed. R. Civ. P. 30 .......................................................................... 10, 13

Fed. R. Civ. P. 30(b) ........................................................................... 17

Fed. R. Civ. P. 30(e) ........................................................................... 17

Fed. R. Civ. P. 56 ...................................................................... 10, 13, 14

Fed. R. Civ. P. 56(e) .................................................................... 10, 15

# STATEMENT OF JURISDICTION

Appellee Airbus Americas, Inc. is satisfied with the "Statement of Jurisdiction" set forth in Appellant's Brief. (Applt. Br., p. v). See Fed. R. App. P. 28 (b)(1).

## STATEMENT OF THE ISSUES

1.      May a former employee, without citing to the undisputed facts before the District Court, rely upon the Seventh Amendment as an avenue by which to avoid summary judgment on employment discrimination claims?

2.      May a former employee avoid summary judgment on his employment discrimination claims by asserting that the District Court improperly granted a Motion to Strike, did not rule upon a Partial Motion to Dismiss, and did not furnish him with a copy of his deposition?

3.      May a former employee successfully overcome a grant of summary judgment on his race discrimination and retaliation claims when the record before this Court makes clear that the facts were considered in the light most favorable to the employee and the proper burdens of proof and frameworks were utilized by the District Court?

4.      May a former employee claim FMLA interference and/or retaliation where he was awarded all leave sought, was returned to work thereafter, and where the District Court's not ruling on a Partial Motion to Dismiss was, at best, harmless error?

1

## STATEMENT OF THE CASE

### I.    The Course of Proceedings and Disposition Below

This appeal arises from the District Court's grant of summary judgment in favor of Airbus on January 28, 2025. (Doc. 82). Appellant Keith Cooper ("Appellant") initially filed his Complaint on August 16, 2023. (Doc. 1). Thereafter, on May 10, 2024, after obtaining leave of Court, Appellant filed an Amended Complaint, which added claims under the Family and Medical Leave Act of 1993 ("FMLA") (Doc. 31). Airbus timely filed an Answer, as well as its Partial Motion to Dismiss, on May 20, 2024. (Docs. 32-33). On September 26, 2024, the District Court granted the Partial Motion to Dismiss, but allowed Appellant the opportunity to file another Amended Complaint. (Doc. 56). Appellant did so on October 9, 2024. (Doc. 60). Airbus again filed an Answer and a Partial Motion to Dismiss. (Docs. 61-62).

Following completion of discovery, Airbus filed its Motion for Summary Judgment, along with its Brief and Evidentiary Submission. (Docs. 63, 66-67). Appellant filed a Response (Doc. 72), and Airbus filed a Reply (Doc. 74). Airbus also filed a Motion to Strike. (Doc. 75), to which Appellant responded. (Doc. 77). On January 14, 2025, the District Court entered an Endorsed Order granting Airbus' Motion for Summary

Judgment. (Doc. 81). The District Court entered its Order and Judgment on January 28, 2025. (Docs. 82-83). This appeal followed.

## II.    Statement of Facts

### A.    Airbus' Mobile Final Assembly Line

Airbus is a commercial aircraft manufacturer, which opened its first commercial aircraft production facility, known as the Final Assembly Line ("FAL") in Mobile, Alabama in 2015. (Doc. 67, p. 2). Both the A220 and A320 aircraft are produced at the FAL. (Doc. 67, p. 2). At the FAL, the flowline is where the aircraft are built, and the flightline is where the aircraft is located when manufacturing is completed. *See id.* At all times relevant to this action, Airbus has had in place an Equal Employment Opportunity policy. (Doc. 67, p. 2).

### B.    Appellant's Employment at Airbus

Appellant began work at Airbus in May 2019 in the role of Corrosion Specialist. (Doc. 67, p. 3). In that role, he was responsible for ensuring the aircraft had proper sealant. *See id.* As a Corrosion Specialist, Appellant performed tasks as directed and followed work instructions. *See id.*

3

### C.    Appellant's Initial Training as a Manufacturing Engineer

After attending a listening session in 2021, during which Appellant volunteered that he had an Associate's degree, he was approached about entering the Manufacturing Engineer ("ME") program. (Doc. 67, p. 4). After two interviews, during which Appellant represented his experience with "multiple programs," he was selected as an ME and began work in that role in February 2021. (Doc. 67, pp. 4-5). The ME position includes manufacturing assessments of non-conformities, late changes to support production, and updating master data for the documentation package accompanying the aircraft. (Doc. 67, p. 4). Likewise, the ME required more than just a mastery of software programs and skills; rather, the ME was required to employ analytical skills and properly use available programs for overall engineering of the aircraft. *See id.* ME's could be assigned to either the flightline or the flowline. (Doc. 67, p. 5).

Appellant began his training in February 2021, with Reid Stewart assigned as his trainer. (Doc. 67, p. 5). The goal of training was to enable Appellant to work autonomously and be assigned his own aircraft. *See id.* Although Appellant believes he should have been sent to Germany for training, there is no evidence within the record showing that all ME's

4

were. *See id.* For ME's coming to Airbus with no prior experience, up to eighteen months of training may be offered, only if the ME shows sufficient progress in mastering the role. (Doc. 67, pp. 5-6).

On May 12, 2021, Appellant met with Stewart and Bruno Fiton ("Fiton") to assess his first three months as an ME. (Doc. 67, p. 6). The assessment revealed a lack of progression by Appellant, to include not knowing what a concession was, how to open a concession, and understanding the difference between a concession and a non-conformity. *See id.* Around this same time, Stewart asked to be removed as Appellant's trainer. *See id.*

**D.    Appellant's May 2021 Complaint to Human Resources**

Shortly after his first review, on May 25, 2021, Appellant emailed Ethan Mattocks ("Mattocks"), Employee Relations Specialist and Human Resources Business Partner, regarding issues with his training. (Doc. 67, pp. 6-7). Mattocks, along with Stephanie Burt ("Burt"), Director of Human Resource Operations, met with Appellant on May 27, 2021. (Doc. 67, p. 7). Although he expressed concern about not receiving proper training, Appellant, by his own admission, did not mention race during the meeting. *See id.* Mattocks subsequently conducted an investigation,

which revealed that Appellant had expressed concerns about his own abilities and that he had experienced issues with others on the team. (Doc. 67, pp. 7-8). Thereafter, on May 31, 2021, Appellant emailed Mattocks about an incident occurring within the office. (Doc. 67, p. 8). Mattocks again investigated, concluding that there had been a verbal altercation between Appellant and another employee and that Appellant had made threats regarding that employee. *See id.* Ultimately, given Appellant's own concerns and the interactions he had had with co-workers, Mattocks and Fiton assigned him a new trainer. *See id.*

### E.    Appellant's Second Period of Training

Along with the new trainer, Bernard Bousquet ("Bousquet"), came a Letter of Expectations, which acknowledged the prior training issues. (Doc. 67, pp. 8-9). In June and July 2021, Appellant received additional assessments, revealing the need for progress on his part, but pointing out his inability to grasp the basic requirements of the ME role. (Doc. 67, pp. 9-10). Around that same time, Appellant raised concerns about Bousquet's treatment of him and thereafter took FMLA leave. (Doc. 67, p. 10).

### F.    Appellant's Performance Improvement Plan

While Appellant was out on leave, Mattocks and Bousquet considered next steps for him, including the possibility of termination, but ultimately settled upon a Performance Improvement Plan ("PIP"). (Doc. 67, p. 10). In August 2021, Appellant was presented with the PIP and assigned a new trainer, Eric Crosby ("Crosby"). *See id.* The PIP set out his performance history and laid out specific tasks that Appellant was to master within a 30-day time period. *See id.* The PIP noted that there would be weekly meetings to assess progress. (Doc. 67, p. 11). Notably, Appellant could not say that he was discriminated against by being put on a PIP. (Doc. 67, p. 14).

During the first week of the PIP, the goal was to allow Appellant to orient himself with the team, learn the information technology tools necessary, and to learn the build of the aircraft; there was no formal assessment. (Doc. 67, p. 11). On August 17, 2021, Mattocks and Fiton met with Appellant, noted his progress on three tasks, and noted he had "favorable" progression. *See id.* However, on August 23, 2021, during another assessment, it was observed that Appellant still needed training on certain tasks, and an "unfavorable" rating was assigned. *See id.*

Appellant was allowed to "redo" the prior tasks that he had not satisfactorily completed, resulting in a "favorable" rating as to progression on August 31, 2021. *See id.* On September 8, 2021, during another meeting with Mattocks and Fiton, Appellant failed to demonstrate understanding of the aircraft issue, versus the information technology involved in the issue; this was a basic task assigned to ME's that Appellant consistently failed to complete successfully. (Doc. 67, p. 12).

### G.    Appellant's Termination

Although the documentation from the September 8, 2021 meeting indicated the possibility of another week being added to the PIP, Fiton and Mattocks determined that Appellant had failed to progress sufficiently, even when assigned three separate trainers over a six-month period. (Doc. 67, p. 12). The decision to terminate his employment had nothing to do with his race, prior complaints, or FMLA leave, and no one said anything to Appellant suggesting such. *(*Doc. 67, pp. 12-13). During discovery in this action, Appellant named no comparator treated more favorably. (Doc. 67, p. 12). Mattocks contacted Appellant by telephone on September 10, 2021, and informed him of his termination. *See id.* The

termination letter issued to Appellant reflected that he had previously received a letter of expectations, had been assigned three trainers, and had not successfully completed the PIP. (Doc. 67, p. 13).

### H.    Appellant's FMLA Leave While at Airbus

In February 2021, Appellant took FMLA leave for COVID-19 and returned to work thereafter. (Doc. 67, p. 13). In June 2021, almost immediately after his first ME assessment and complaints made to Mattocks, Appellant took FMLA leave for his mental health. *See id.* There was initial confusion about the dates for which he was seeking leave, but Appellant was in fact approved for leave and allowed to return to work upon its conclusion. *See id.* Shortly after his July 2021 assessment, Appellant requested, and was granted, an additional period of FMLA leave for his mental health. (Doc. 67, p. 14). Appellant returned to work on July 28, 2021. *See id.*

### III.    <u>Standard of Review</u>

A *de novo* standard governs this Court's review of the grant of summary judgment. *Cast Steel Prods., Inc. v. Admiral Ins. Co.,* 348 F.3d 1298, 1301 (11th Cir. 2003). This Court can affirm the District Court "on any ground that finds support in the record." *Lucas v. W.W. Grainger, Inc.,* 257 F.3d 1249, 1256 (11th Cir. 2001).

9

## SUMMARY OF THE ARGUMENT

Summary judgment was properly granted in favor of Airbus. As an initial matter, the District Court correctly applied Fed. R. Civ. P. 56 in ruling on Airbus' Motion for Summary Judgment. The District Court did not improperly exclude evidence submitted by Appellant and instead correctly applied Fed. R. Civ. P. 56(e) in striking only some of Appellant's evidence. The District Court's not ruling on the Partial Motion to Dismiss was, at most, harmless error that did not prejudice Appellant's ability to argue his FMLA claims, and such claims were, in fact, considered by the District Court at summary judgment. The District Court did not improperly deny Appellant access to his deposition transcript in violation of Fed. R. Civ. P. 30.

The District Court's grant of summary judgment in favor of Airbus on Appellant's race discrimination claim was proper. While viewing the evidence in the light most favorable to Appellant, the District Court considered such evidence through three separate methods of proof: direct evidence, the traditional burden-shifting framework set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) and through the convincing mosaic of circumstantial evidence. The District Court correctly

10

determined that Appellant presented no direct evidence. In applying *McDonnell Douglas*, the District Court accurately found that Appellant had not identified a similarly-situated comparator who was treated more favorably. The District Court likewise properly held that Appellant's evidence did not form a convincing mosaic of circumstantial evidence sufficient to survive summary judgment.

Similarly, the District Court correctly viewed the evidence and utilized applicable law in granting summary judgment on Appellant's retaliation claim. Even assuming, for purposes of argument only, that Appellant had, in fact, been able to prove statutorily protected conduct on his part, the District Court did not err in granting summary judgment on the basis that there was an insufficient causal connection to support a *prima facie* case of retaliation. Moreover, the District Court correctly found that Appellant failed to show pretext sufficient to call into question Airbus' articulated legitimate, non-retaliatory reasons for its actions.

Finally, the District Court's grant of summary judgment in favor of Airbus on Appellant's FMLA retaliation claim was justified by the record evidence and applicable law. The District Court correctly held that there was no direct evidence of retaliation by Airbus. Additionally, the District

11

Court found that Appellant could not establish that his utilization of FMLA leave was the but-for cause of any adverse employment action.

## ARGUMENT AND CITATIONS TO AUTHORITY

The District Court properly granted summary judgment in favor of Airbus. First, the District Court accurately applied long-standing summary judgment principles, and no actions taken by the Court deprived Appellant of any rights afforded to him by the Seventh Amendment or the Federal Rules of Civil Procedure. Second, the District Court afforded Appellant the opportunity to prove race discrimination through three separate and distinct methods of proof, but ultimately, and correctly, concluded that Appellant failed to meet his burden. Likewise, the District Court relied upon the undisputed facts and applicable precedent in concluding that there was no genuine issue of material fact regarding his retaliation claim. Moreover, the District Court did not err in granting Airbus' Motion for Summary Judgment with regard to Appellant's FMLA retaliation claim, given that the undisputed facts before the Court demonstrated a lack of requisite causal connection.

## I.    The District Court Properly Applied Summary Judgment Principles.

The District Court properly relied upon and utilized Fed. R. Civ. P. 56 in granting Airbus' Motion for Summary Judgment. The District Court did not err in partially granting the Motion to Strike. The fact that the District Court did not rule upon the second Partial Motion to Dismiss prior to issuing its opinion on summary judgment did not prejudice Appellant. Finally, Fed. R. Civ. P. 30 did not require the District Court to furnish Appellant a copy of his deposition transcript.

### A.    The District Court's Grant of Summary Judgment to Airbus Did Not Violate Appellant's Seventh Amendment Rights.

Appellant argues that the District Court denied his due process rights and his right to a trial under the Seventh Amendment. (See Applt. Br., p. 17). In so doing, Appellant relies upon *Burns v. Lawther*, 53 F.3d 1237 (11th Cir. 1995), a case involving an inmate's right to a jury trial. However, this Court has clearly held that "summary judgment does not violate the Seventh Amendment." *Jefferson v. Sewon Am., Inc.,* 891 F.3d 911, 919 (11th Cir. 2018), *quoting Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 336 (1979). Moreover, summary judgment applies in job discrimination cases just as in other cases. *See Chapman v. AI Transport*,

13

229 F.3d 1012, 1026 (11th Cir. 2000) (en banc). As such, there was no error by the District Court and no violation of Appellant's Seventh Amendment rights.

Appellant's attempt to convince this Court that the District Court did not comply with the mandates of Fed. R. Civ. P. 56 fails. Contrary to Appellant's argument (See Applt. Br., p. 11), the District Court did, in fact, apply applicable frameworks, including, but not limited to, the convincing mosaic of circumstantial evidence. (Doc. 82, p. 20). Moreover, Appellant inaccurately represents the District Court's view of the facts in an effort to argue that the facts were not considered in the light most favorable to the non-movant, as required by *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Instead of citing to the record before the District Court (which included his sworn testimony under oath) (Doc. 67), Appellant instead refers to the Joint Pretrial Document (Doc. 80), which included sections of "disputed facts" unsupported by the actual record evidence. A view of the record evidence reviewed by the District Court, versus Appellant's own personal disputes, makes clear that the District Court did not err in granting Airbus' Motion for Summary Judgment.

14

**B.    The District Court's Rulings on the Motion to Strike Were Not in Error.**

Appellant also contests the District Court's rulings on the Motion to Strike (Doc. 75), alleging that the District Court excluded his evidence "wholesale." (See Applt. Br., p. 16). A review of the District Court's Order (Doc. 82), however, makes clear that only portions of the Motion to Strike were granted. (Doc. 82, pp. 3-7). The District Court properly struck statements by Appellant that contradicted his prior sworn testimony. (Doc. 82, pp. 3-4); *see Van T. Junkins v. U.S. Indus., Inc.,* 736 F.2d 656 (11th Cir. 1983). The District Court struck portions of Appellant's evidence – such as stating that the PIP was based on vague and subjective criteria – that were challenged as conclusory arguments rather than statements of fact based on personal knowledge. (Doc. 82, p. 5); *see Evers v. General Motors Corp.,* 770 F.2d. 984, 986 (11th Cir. 1985) (stating that affidavits in opposition to a motion for summary judgment which contain conclusory allegations without specific facts to support such allegations have no probative value). The requirements of Fed. R. Civ. P. 56(e) allow for striking of evidence that does not comply. *See Dortch v. City of Montgomery*, No. 2:07CV1034-MEF, 2009 WL 959638 (M.D. Ala. April 8, 2009), *citing Leigh v. Warner Bros., Inc.*, 212 F.3d

15

1210,1217 (11th Cir. 2000). Consequently, the District Court did not err in partially granting the Motion to Strike.

**C.    The District Court's Lack of Ruling on the Partial Motion to Dismiss Did Not Prejudice Appellant.**

Appellant contends that the District Court's failure to rule upon the Partial Motion to Dismiss (Doc. 62) prejudiced his ability to defend his FMLA retaliation claim at summary judgment. (See Applt. Br., pp. 16-17). Appellant fails to set out how a "clear ruling" would have benefitted him at summary judgment, particularly where both Airbus, in its brief (Doc. 67), and the District Court in its Order (Doc. 82, pp. 32-33), explicitly addressed the substantive merits of the FMLA retaliation claim, proceeding beyond the statute of limitations issues. Ultimately, the District Court concluded that Appellant's FMLA retaliation claim could not withstand summary judgment due to the lack of causal connection between his leave and the adverse actions at hand, namely his PIP and subsequent termination. (Doc. 82, pp. 34-35). Even assuming, for the purposes of argument only, that the District Court erred in not ruling on the second Partial Motion to Dismiss prior to entry of its Endorsed Order and Order on Airbus' Motion for Summary Judgment, such error was harmless. The failure to rule did not affect the case

16

outcome, since allowing Appellant to amend his Complaint to include an FMLA retaliation claim would not have altered the final ruling that Appellant could not establish the requisite causation to support such a claim. *See Process Techs. Servs., LLC v. Lunsford*, Civ. Action No. 1-15-CV-2323-SCJ, 2016 WL 9065879 at *5 (N.D. Ga. Mar. 7, 2016).

**D.    The District Court Did Not Have a Duty to Provide Appellant with a Copy of His Deposition Transcript.**

Appellant contends that the District Court denied him a copy of his deposition transcript, thereby not allowing him to correct errors or "raise appropriate motions." (See Applt. Br., pp. 19-20). In so doing, Appellant mentions Fed. R. Civ. P. 30(e), which provides in pertinent part as follows:

> On a request by a deponent or a party before the deposition is completed, a deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:
>
> (A) to review the transcript or recording; and
>
> (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

Fed. R. Civ. P. 30(b) calls for "strict compliance with [its] procedural requirements." *Travelers Indem. Co. of Connecticut v. Attorney's Title Ins. Fund., Inc.*, Case No. 2:13-cv-670-FTM-38CM, 2016 WL 866368 at *2

17

(M.D. Fla. Mar. 7, 2016), *quoting Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1304 (11th Cir. 2010). Nowhere in the record is there any indication that Appellant sought a copy of his deposition transcript prior to completion of his deposition. Appellant cites to no rule, regulation, or caselaw mandating that the District Court undertake this task for him. Even more importantly for purposes of this Court's review, Appellant did not raise this issue, nor the issue of Ethan Mattocks's attendance at his deposition,[1] before the District Court. As such, he is foreclosed from raising them now. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).[2]

---

[1] Mr. Mattocks's attendance adhered to the practice of allowing one client representative to attend, in accordance with *Introduction to Civil Discovery Practice in the Southern District of Alabama*, p. 3, available at https://www.alsd.uscourts.gov/sites/alsd/files/Discovery_Practice.pdf (last visited Mar. 25, 2025).

[2] This is not a case in which an exception should be made to this long-standing rule, given that Appellant's not requesting his own deposition transcript – again, not an issue raised before the District Court – would not result in a miscarriage of justice. *See Ruiz v. Wing*, 991 F.3d 1130, 1141 (11th Cir. 2021).

18

## II.    The District Court Properly Granted Summary Judgment on the Merits as to Each of Appellant's Claims.

Notably, Appellant's Brief does not, in large part, address the District Court's substantive rulings on each of his claims: race discrimination, retaliation, and FMLA retaliation. Nevertheless, the record before this Court demonstrates that the District Court did not err in determining that there was no genuine issue of material fact and that Airbus was entitled to judgment as a matter of law as to each claim.

### A.    The District Court Correctly Utilized All Three Proof Frameworks in Determining that there was No Genuine Issue of Material Fact regarding Appellant's Race Discrimination Claim.

Appellant suggests, without any basis, that the District Court did not accurately apply all three burdens of proof applicable to his race discrimination claim. (See Applt. Br., p. 19). The record, however, tells a different story. Not only did Airbus brief the race discrimination claim to include all three methods of proof (direct evidence, circumstantial evidence, and convincing mosaic) (Doc. 67, pp. 16-17, 19), but, more importantly, the District Court analyzed Appellant's race discrimination claim pursuant to all three methods. (Doc. 82, pp. 20-24).

The District Court correctly concluded that there was no direct evidence, namely, "only the 'most blatant remarks,' whose intent could

19

be nothing other than to discriminate…" *Harris v. Pub. Health Tr. of Miami-Dade Cty.*, 82 F.4th 1296, 1301 (11th Cir. 2023), to support Appellant's race discrimination claim. Appellant's assertions regarding a note prepared by Mattocks and a singular racial slur by a co-worker were considered by the District Court, which determined that these did not meet the standard articulated by this Court. (Doc. 82, p. 21). Appellant raised no other so-called direct evidence to the District Court and does not attempt to do so now.

Appellant's Brief at p. 21 appears to insinuate that the District Court erred in finding that he did not identify a comparator under the *McDonnell-Douglas* burden-shifting framework. However, Appellant's citation to facts he chose to dispute in a Joint Pretrial Order do not alter the record before the District Court. That record made clear that Appellant conceded that he knew of no other ME who did not successfully complete training who was retained by Airbus. (Doc. 67, pp. 12, 14). Indeed, the District Court addressed Appellant's eleventh hour identification of alleged comparators in his response brief, finding that this identification came from speculation and contradicted his prior sworn deposition testimony. (Doc. 82, pp. 23-24). The District Court

20

specifically addressed head-on the issue of "unequal or insufficient training" (Applt. Br., p. 20) raised by Appellant, noting the distinctions between Appellant and those he identified.

Finally, the District Court also reviewed Appellant's race discrimination claim under the "convincing mosaic of circumstantial evidence" standard. (Doc. 82, p. 24, *citing Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1226 (11th Cir. 2019)). In so doing, the District Court contemplated "suspicious timing," consistent with *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1342 (11th Cir. 2023). The District Court reviewed the record evidence in an effort to determine whether Airbus's actions were a "coverup for a discriminatory decision." (Doc. 82, p. 25, *citing Rojas v. Fla.*, 285 F.3d 1339, 1342 (11th Cir. 2002)), and found no such evidence. Contrary to Appellant's Brief (p. 22), his second-guessing of Airbus's decision to place him on a PIP and subsequently terminate his employment is insufficient to overcome summary judgment or the District Court's ruling thereon. *See, e.g., Salser v. Clarke Cnty. Sch. Dist.*, 802 F.Supp. 2d 1339, 1360 (M.D. Ga. 2011).

**B.  The District Court Viewed the Evidence in the Light Most Favorable to Appellant in Finding No Support for the Retaliation Claim.**

Appellant's Brief makes only sparse mention of his retaliation claim. Again relying on his version of "disputed" facts, rather than the record before the District Court (to include his own sworn deposition testimony), Appellant questions "whether Plaintiff's May 25-26, 2021 complaints put Defendant on notice of race-based concerns." (Applt. Br. p. 20). The District Court squarely dealt with this issue, citing to the record, which revealed complaints of general unfairness and poor training. (Doc. 82, pp. 27-28). Neither are enough under the laws of this Circuit to constitute statutorily protected activity for purposes of a retaliation claim. *See Bowens v. Escambia Cty. Bd. of Educ.*, No. 22-11560, 2023 WL 4145424 at *7 (11th Cir. June 23, 2023).

Appellant's brief also raises the issue of "whether the timing and sequence of events support a retaliatory motive." (Applt. Br., p. 14). The District Court, in determining whether there was a genuine issue as to causal connection, contemplated not only temporal proximity (Doc. 82, p. 29), but also the intervening cause of both the PIP and the termination – Appellant's ongoing inability to perform the ME position or make

22

sufficient progression towards being able to do so. (Doc. 82, p. 29, *citing*

*Fleming v. Boeing Co.*, 120 F.3d 242, 248 (11th Cir. 1997)). The District

Court did not err in its review of the record before it – a record showing

that Appellant complained in May 2021, that he received a PIP in August

2021, that his employment terminated in September 2021, and, that

between those events, he continued not to sufficiently progress in his

training. (Doc. 82, p. 29). Thus, the District Court, using the record before

it, accurately concluded that there was no genuine issue of material fact

regarding retaliation.

### C. The District Court Accurately Ruled on the FMLA Retaliation Claim.

As set forth in greater detail in Section I.C., *supra*, the District

Court's not ruling on the Partial Motion to Dismiss did not prejudice

Appellant. The District Court did, in fact, consider the merits of

Appellant's FMLA claim. In doing so, the District Court did not err in

concluding that there is no genuine issue of material fact regarding that

claim.

Appellant's Brief appears to suggest that the decision to place him

on a PIP, and the subsequent decision to terminate his employment, were

both made while he was on FMLA leave and therefore constitute

23

sufficient evidence for the District Court to find a genuine issue of material fact. (Applt. Br., p. 21). The record before the District Court, demonstrates otherwise.

The undisputed evidence presented to the District Court made clear that Appellant could not establish FMLA retaliation via direct or circumstantial evidence. (Doc. 82, p. 32). The District Court properly concluded that there was no direct evidence, and nothing in Appellant's Brief suggests anything to the contrary. With regard to circumstantial evidence, the District Court considered the very argument that Appellant presents upon appeal: namely, that Airbus discussed placing him on a PIP and later terminated him while he was on FMLA leave. (Doc. 82, p. 34). The District Court properly noted that the uncontroverted evidence submitted by Airbus's Human Resources showed that there was an ongoing inability by Appellant to master the most basic tasks of an ME, separate and apart from his usage of FMLA leave, that preceded and eventually led to such discussions. (Doc. 67, pp. 6, 9-10, 11; Doc. 82, p. 34). As the District Court stated, "the FMLA 'does not insulate an employee who has requested medical leave from being terminated for poor performance.'" (Doc. 82, p. 3 5, *citing Gamba v. City of Sunrise*, 157

24

Fed. App'x 112, 113 (11th Cir. 2005)). Appellant has identified nothing in the record before this Court indicating that the District Court erred in granting summary judgment in favor of Airbus on his FMLA retaliation claim.

## **CONCLUSION**

For the above reasons, the judgment of the District Court is due to be affirmed.

Respectfully submitted,

 *s/Kathryn M. Willis*
KATHRYN M. WILLIS
ASB-8533-N76M
*Attorney for Appellee, Airbus*
*Americas, Inc.*

OF COUNSEL:

BURR & FORMAN LLP
11 North Water Street, Suite 22200
Mobile, Alabama 36602
Telephone: (251) 344-5151
Facsimile: (251) 344-9696
Email:       kwillis@burr.com

25

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to 11th Cir. R. 28-1(m), this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because it contains 4,844 words, including the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(b)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Century Schoolbook 14 point type.

*s/ Kathryn M. Willis*
OF COUNSEL

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2025, a copy of the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system. Counsel for Appellee certifies that a true and correct copy of the foregoing has been served upon Appellant via U.S. Mail, postage prepaid and properly addressed and via email as follows:

Keith Cooper
223 Whatley Avenue
Whistler, Alabama 36612
keithcooper36610@gmail.com


*/s/ Kathryn M. Willis*
COUNSEL

27